UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BOBBIEJO NICHOLS,

    Plaintiff,

v.                                              Case No. 1:09-cv-1091
                                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                        /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on May 6, 1963 (AR 30).[1] She completed the eighth grade (AR 31). Plaintiff alleged a disability onset date of December 1, 2005 (AR 143). She had previous employment as an assembly line worker, cashier, janitor and laundress (AR 149). Plaintiff identified her disabling conditions as asthma, breathing problems, depression and thyroid problems (AR 148). On May 2, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 11-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December1, 2005, and had met the insured status requirements of the Social Security Act through December 31, 2007 (AR 13). At step two, the ALJ found that plaintiff suffered from severe impairments of chronic obstructive pulmonary disease (COPD) and mild mental retardation (AR 13). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 14).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a limited range of sedentary work:

> she can lift up to 10 pounds occasionally and less weight frequently; stand/walk for 2 hours and sit for up to 6 hours in an 8-hour period, with normal breaks; frequently balance, stoop, crouch, and crawl; occasionally climb ramps or stairs; and never climb ladders, ropes, or scaffolds; in work limited to simple, routine, and repetitive job tasks that do not require reading written instructions or exposure to respiratory irritants (fumes, odors, dust, gases, chemicals, etc.).

(AR 16). The ALJ also found that plaintiff had no relevant past work experience (AR 18).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of sedentary jobs in the national economy (AR 19-20). Specifically, plaintiff could perform approximately 7,000 jobs in the regional economy: assembler (4,000 jobs); packager/sorter (1,000 jobs); and machine tender (2,000 jobs) (AR 19). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act at any time through the date his decision (AR 19-20).

### III. ANALYSIS

Plaintiff has raised three issues on appeal:

**A.  The ALJ's RFC findings are not supported by substantial evidence.**

**1.  Respiratory irritants**

Plaintiff contends that the ALJ did not properly evaluate her physical RFC with respect to the requirement that she avoid respiratory irritants. Specifically, plaintiff contends that the ALJ made no explicit finding regarding her exposure to respiratory irritants; rather his hypothetical question posed to the vocational expert (VE) indicated a finding that plaintiff must avoid moderate exposure to the irritants. Plaintiff's Brief at pp. 10-13. In addition, the ALJ did not articulate his reasons for rejecting the state agency consultant's limitation that plaintiff would need to "avoid all exposure" to fumes, odors, dusts, gases and poor ventilation. *Id.* at p. 11.

In his RFC determination, the ALJ found that plaintiff was limited to jobs "that do not require . . . exposure to respiratory irritants (fumes, odors, dust, gases, chemicals, etc.) (AR 16). After noting that plaintiff was diagnosed with COPD, the ALJ made the following determination:

> [H]owever, the overall evidence of record also indicates that this condition is fairly well controlled by her medication regimen. She has not required in-patient hospitalization for treatment of breathing-related complications on a regular basis, nor does the record show that she has required frequent emergent treatment for symptoms unresponsive to her prescribed medications. In addition, I note, with interest, that while claimant testified that she uses oxygen "constantly," she admitted that she did not wear an oxygen cannister when she submitted several applications for jobs in her city of Greenville, Michigan in 2008. Furthermore, despite her respiratory symptoms, she acknowledged that she continues to smoke one and one-half packs of cigarettes daily. While I find it reasonable to conclude that exposure to respiratory irritants such as gases, fumes, odors, chemicals, poor ventilation, etc. could precipitate her development of shortness of breath, such a limitation does not significantly erode the occupational base of work.

(AR 17).

5

In a physical RFC assessment, a non-examining state agency physician, Thomas Valle, determined that plaintiff should "avoid all exposure" to "fumes, odors, dusts, gases, poor ventilation, etc." (AR 344). When asked to "[d]escribe how these environmental factors impair activities and identify hazards to be avoided," the physician stated "[a]void any gases or fumes which are concentrated" (AR 344). The ALJ's decision did not explicitly refer to this finding. In posing a hypothetical question to the VE, the ALJ included exertional limitations of light work, postural limitations, jobs that did not require complex written communications, work limited to simple, routine and repetitive tasks, and an environmental limitation that the person "avoid all exposure to irritants such as fumes, odors, dust, gasses and poorly ventilated areas" (AR 62). The VE asked to clarify, noting that there was no such place ("[y]ou'd be in a bubble") (AR 38-39). At that point, the ALJ modified the question to include a limitation for "moderate exposure" to irritants such as fumes, odors, dust, gasses and poorly ventilated areas (AR 39). In response, the VE identified jobs in the light, unskilled category, such as about 16,000 assemblers, about 16,000 packers, and about 6,000 inspectors (AR 63). A second hypothetical question posed to the VE reduced the exertional level to sedentary work, with the same mental, communication and environmental limitations 9AR 63-64). In response, the VE reduced the available jobs to about 4,000 assemblers, about 1,000 packers and sorters, and about 2,000 machine tenders (AR 64). In his decision, the ALJ adopted the 7,000 jobs identified by the VE in response to the second hypothetical question (AR 19).

The environmental restriction included in the second hypothetical, i.e., moderate exposure to irritants such as fumes, odors, dust, gasses and poorly ventilated areas, is not the limitation which is set forth in the ALJ's RFC determination, or the restriction in the state agency

6

physician's RFC. In this regard, the state agency physician's opinion, as modified, would require plaintiff to avoid all exposure to "any gases or fumes which are concentrated" (AR 344). The ALJ could have included an environmental limitation to "avoid even moderate exposure" to fumes, odors, gases, poor ventilation, etc., but did not choose this limitation (AR 344).

The court agrees with plaintiff that the environmental limitations upon which the ALJ relied in obtaining the vocational evidence, i.e., moderate exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas, is not the same limitation as the state agency physician's determination that plaintiff "[a]void any gases or fumes which are concentrated" (AR 344).

Defendant contends, on the other hand, that the ALJ's decision *was* supported by the state agency physician, submitting "that this non-examiner's opinion is not clearly inconsistent with the ALJ's assessment of Plaintiff as able to withstand exposure to moderate respiratory irritants." Defendant's Brief at p. 8. The court disagrees. A restriction that plaintiff should avoid "any gases or fumes which are concentrated" is not the same as a restriction that plaintiff should avoid "moderate respiratory irritants." In this regard, the court agrees with plaintiff that the ALJ appears to have reached an independent medical decision that plaintiff could work in an environment with moderate exposure to a number of respiratory irritants.

This is not harmless error. Given that the VE identified only 7,000 available jobs, different environmental restrictions could erode this job base to the point where there is no substantial gainful employment that plaintiff could perform in the national economy. *See* 42 U.S.C. § 423(d)(2)(A) ("[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy").

Accordingly, this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the environmental limitations applicable to plaintiff.

### 2. Mental Limitations

Plaintiff contends that the ALJ's determination that she suffered from mild mental retardation was not supported by substantial evidence. In addition, plaintiff contends that the ALJ failed to fully and fairly develop the record with respect to this claim. The regulations provide for a special technique in evaluating the severity of a claimant's mental impairment at steps two and three of the sequential evaluation. *See* 20 C.F.R. § 404.1520a(a). The Sixth Circuit explained the special technique as follows:

> At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." *Id.* § 404.1520a(b)(1). If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq.* ; *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir.2008). The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id.* If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. *Id.* § 404.1520a(d)(1). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. *See id.* § 404.1520a(d)(2).

> At step three, an ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id.* The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* § 404.1525(a). In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled.
>
> Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). A claimant must satisfy all of the criteria to meet the listing. *Id.* . . . If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC and move on to steps four and five. 20 C.F.R. § 404.1520a(d)(3).
>
> Importantly, the regulations require an ALJ to document the application of this special technique in the written decision. *Id.* § 404.1520a(e). Until 2000, an ALJ was required to complete a PRTF and append the form to the decision. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50,746 (Aug. 21, 2000). Now, the regulations require only an ALJ's written decision to "incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(2). The decision must refer to the "significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* The decision must also "include a specific finding as to the degree of limitation in each of the functional areas." *Id.* At step three, the ALJ's decision must "record the presence or absence of the criteria [of the listing] and the rating of the degree of functional limitation." *Id.* § 404.1520a(d)(2).

*Rabbers v. Commissioner Social Security*, 582 F.3d 647, 652-54 (6th Cir. 2009).

Here, the ALJ relied upon a Psychiatric Review Technique form (PRTF) prepared by a non-examining physician, John Pai, M.D., in November 2006 (AR 14-16, 326-39). Dr. Pai determined that plaintiff suffered from dysthymia, which "not severe" and which did not meet the requirements of Listing 12.04 (Affective Disorders) (AR 14-16, 326-39). Dr. Pai's PRTF did not address the issue of mental retardation, an impairment not evident from plaintiff's records in 2006. The issue of mental retardation was developed in a psychological evaluation arranged by plaintiff's representative a few days before the administrative hearing in 2009 (AR 14, 692-94). Samuel I.

9

Goldstein, Ph. D., examined plaintiff on March 27, 2009, and determined that she had a verbal IQ score of 67, a performance IQ score of 73 and a full scale IQ score of 67 (AR 694). After the administrative hearing, plaintiff's representative submitted additional evidence (AR 216-46), including plaintiff's school records and an opinion from another psychologist, Edward Czarnecki, Ph.D., who concluded that the IQ scores were valid and that the school records provided "ample evidence of significant cognitive and learning problems and limitations" (AR 239).[2] Based on this evidence, the ALJ concluded that plaintiff was mildly retarded, but did not meet the requirements for the mental retardation at Listing 12.05 (AR 14-16).

The record reflects that the ALJ followed the special technique, by including pertinent findings and conclusions in his decision (AR 14-16). In this regard, the ALJ found that plaintiff had: no restrictions of activities of daily living; mild difficulty with maintaining social functioning; moderate difficulty with maintaining concentration, persistence, or pace; and no episodes of decompensation as that term is defined in the agency's regulations (AR 15). After finding that plaintiff did not meet the requirements to be determined disabled under Listing 12.05, the ALJ reviewed the evidence to establish the limitations posed by both her physical and mental impairments (AR 16-18). After noting the absence of documented "significant deficits of cognition, memory, concentration, or judgment," and the "significant amount" of plaintiff's daily activities since the alleged disability onset date, the ALJ determined that plaintiff retained the ability to perform "simple, routine and repetitive job tasks that do not require reading written instructions" (AR 16-18).

Finally, the court disagrees with plaintiff's contention that the ALJ had a special duty to develop the record of her mental retardation because she engaged a "non-attorney representative"

---

[2] Plaintiff's representative advised the ALJ that Dr. Goldstein died shortly after his examination of plaintiff (AR 216).

rather than an attorney to pursue her disability claim. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). Here, plaintiff was represented. Plaintiff chose to be represented by Dannelly Smith, a non-attorney representative, identified in the record as an "Advocate for the Disabled," of "DBC Disability Benefits Corporation" (AR 7, 28, 86-94, 208-09, 216-17). An ALJ does not have a special duty to develop the record when a Social Security claimant chooses to be represented by a non-attorney representative. *Kidd v. Commissioner of Social Security*, 283 Fed. Appx. 336, 344-45 (6th Cir. 2008). "In fact, federal regulations permit claimants to choose non-attorneys to represent them at the administrative level. *See* 42 U.S.C. § 406(a); 20 C.F.R. § 404.1705(b)." *Id.* at 345.

Accordingly, plaintiff's claim that the ALJ erred in evaluating her mental impairments should be denied.

### B. The ALJ's step five determination that there is a significant number of jobs that plaintiff can perform is not supported by substantial evidence.

At step five of the sequential evaluation, the ALJ found that plaintiff could perform approximately 7,000 jobs in the regional economy (AR 19). The ALJ's finding was based upon a hypothetical question posed to a vocational expert which included, among other limitations, that plaintiff could work at "occupations that do not require complex written communication and in work that's limited to simple, routine, and repetitive tasks" (AR 61). Plaintiff contends that the ALJ's

RFC determination that she could perform "simple, routine, unskilled work" is not adequate to convey a moderate limitation in her ability to concentrate, persist, and keep pace. The court agrees.

In *Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001), the Sixth Circuit determined that a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner. More recently, in *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010), the Sixth Circuit rejected an ALJ's "streamlined hypothetical" which limited the claimant "to simple, repetitive tasks and instructions in non-public settings," where the ALJ relied upon an RFC assessment which limited the claimant's "ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical." Given the RFC assessment, the *Ealy* court rejected that ALJ's hypothetical question because it omitted "speed - and pace - based restrictions." *Id.* In reaching this determination, the court cited with approval *Edwards v. Barnhart*, 383 F. Supp. 2d 920 (E.D. Mich. 2005), in which the court found that a hypothetical question limiting a claimant to "jobs entailing no more than simple, routine, unskilled work" was not adequate to convey a moderate limitation in the ability to concentrate, persist, and keep pace. *Id.* at 516-17, quoting *Edwards*, 383 F. Supp. 2d at 930-31. The court explained that a claimant with such a moderate limitation, "may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id.*

Given the Sixth Circuit's recent decision in *Ealy*, the court concludes that the ALJ's "streamlined hypothetical" posed in the present case failed to address the speed and pace based

restrictions inherent in a moderate limitation in the ability to concentrate, persist, and keep pace. This result is consistent with *Smith*, 307 F.3d at 378-79, in that both decisions acknowledge the need to account for the claimant's ability to meet speed, pace and/or quota requirements. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the vocational evidence.

### C. The ALJ's credibility finding is erroneous and not supported by substantial evidence.

The ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent alleged (AR 17). With respect to the COPD, the ALJ noted: that plaintiff's condition was well-controlled by her medical regimen; that she did not require in-patient treatment for breathing-related complications on a recurrent basis; that there is no record of frequent emergent treatment for symptoms unresponsive to her prescribed medication; that while plaintiff testified she uses oxygen "constantly," she did not wear an oxygen canister when applying for jobs in 2008; and that despite her respiratory symptoms, plaintiff continues to smoke 1 1/2 packs of cigarettes a day (AR 17). With respect to the mental retardation, the ALJ concluded that her diminished cognitive functioning was not preclusive of all work activity (AR 17). While plaintiff testified that she has a limited ability to read and cannot understand directions, the ALJ noted that she has an e-mail address; that at the administrative hearing, she flipped through several papers to find the one referencing oxygen use; that she attends to all aspects of maintaining an independent residence; that she provides the sole parental care for her two children; and that she actively pursued employment through 2008 (AR 17-18).

13

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded). *See Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007) ("[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact").

After reviewing the record, the court finds no compelling reason to disturb the ALJ's credibility determination. With respect to the COPD, plaintiff's smoking creates a self-fulfilling prophecy of disability. On the one hand, plaintiff claims that she must avoid all respiratory irritants, while on the other hand, she creates an environment of disabling respiratory irritants each day by smoking 1 1/2 packs of cigarettes. Under these circumstances, the ALJ could find her need to avoid all environmental irritants as not credible. *See Auer v. Secretary of Health & Human Services*, 830 F.2d 594, 595 (6th Cir. 1987) (where Social Security claimant suffered from emphysema and asthma and lived with a smoker, claimant's alleged "need to be in an absolutely smoke-free working environment was not found to be wholly credible").

With respect to plaintiff's mental retardation, plaintiff contends, without citation to any authority, that the ALJ circumvented "the requirement of obtaining a proper mental RFC assessment from a qualified medical expert" and substituted his lay opinion for that of a medical source. Plaintiff's contention is without merit. There is no requirement that an ALJ prepare or

14

review a mental RFC assessment form. *See Ehrisman v. Astrue*, 377 Fed. Appx. 917, 919 (11th Cir. 2010) (rejecting Social Security claimant's bald assertion that in addition to performing a PRTF analysis, the ALJ must complete a separate mental RFC assessment or undertake a separate mental RFC analysis); *Rice v. Astrue*, No. 5:07-cv-189, 2008 WL 2945948 at *5 (W.D. Ky. July 25, 2008) (when determining the mental residual functional capacity, "[t]here is no requirement for a special assessment form by the ALJ apart from a narrative discussion of findings in the written decision"). *Cf.*, *Maier v. Commissioner of Social Security Administration*, 154 F.3d 913, 915 (9th Cir. 1998) ("[T]he Mental Residual Functional Capacity Assessment form does not encompass any of the criteria involved in steps one through four of the sequential evaluation process. The Psychiatric Review Technique form does.").

The ALJ stated sufficient reasons to discount plaintiff's credibility, and there is no compelling reason to disturb that credibility determination.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the environmental limitations applicable to plaintiff. Once that is established, the Commissioner should obtain vocational evidence consistent with both plaintiff's environmental limitations and mental limitations.


Dated: November 18, 2010         /s/ Hugh W. Brenneman, Jr.
                                 HUGH W. BRENNEMAN, JR.
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).